Good morning, Your Honor. I'd like to reserve two minutes, if I may. You may. You need to watch the clock. I'll try to help you, but it's your responsibility. Thank you, Judge. My name is Greg Lockwood. I'm here. I represent the appellant, Mr. Randall McReynolds. I'm not going to go ahead and recant all the facts, because they were set forth in the briefs by the appellant and also by the penalty in this case. But what I would like to do is highlight three points, if I may. Why don't you update us on where you are? We did receive a motion. And so if you could maybe start there, and then we'll work backwards if necessary. Yes, Your Honor. We have been in discussions with some attorneys up in Colville who are handling the state actions. And seeing how I'm a CJA-appointed counsel, I'm not involved with the state action that Mr. McReynolds was also involved in. And I think, though, it appears we're going to have an agreement that may apply the time served in the federal case to the state case. And if that occurs, then I think the decision that this Court would be entering would probably be moot at that time. How soon do you expect that to take place? Well, that's the problem, in that we don't know for sure. And I can't give the court guarantees that that actually is going to happen, since it's not something that Mr. Duggan or myself are involved in as far as the state action. So we're relying on someone else. So what is it, a completely different set of orders? Yes. Okay. Well, you have an educated guess, but how long those things take? We should know within probably two weeks whether or not something's going to happen. I think what we could do is do an oral argument, keep the court informed, and if it does come to fruition, we can notify the court. And that way the court doesn't have to actually enter its decision. And just to understand, what would happen then in two weeks if the state court judge accepts your proposal? If the state accepts a proposal, what will happen is that, in essence, the state court action sentence will be satisfied. That way Mr. McReynolds won't be remanded back for a state sentence at the completion of his federal sentence. And he's currently in federal custody. He's currently in federal custody. That's correct, Your Honor. And so then he would just proceed with serving his remainder of his federal sentence. That's correct. So I gather what you would like then is for us to take this case under submission, but defer decision for a certain minimum length of time, right? For two weeks, Judge. We think that should be sufficient. And then within that period, you would ask for a dismissal with prejudice. Dismissal with prejudice or have the court enter its decision. All right. I'm not quite clear as to where this case is in the state court. Apparently there is another team of lawyers who are going to try to get the state court judge to do what? Have a state court judge enter an order allowing that the time served on the failure to surrender charge. The state charge. Yes, to be applied to the state sentence. And if that occurs, the time served is sufficient to cover the 15 months. He's been in custody under time served for over 15 months under the federal system under this charge. If the state allows that to be applied to the state sentence, which is 15 months, it will, in essence, resolve itself. Are they purporting to ask the judge to make the state sentence concurrent with what time he is serving now in the federal system? That's correct. Is that what's involved here? Yes, that's correct. Okay. And I take it both sides in the state system are in agreement with this concept as far as you know. As far as I know, that's correct. Okay. I guess the issue then, right, is what do you want to add to your briefs, right, on the merits here? Well, real quickly, I think that in this particular case, although distinguishable on the facts, that U.S. v. Warren does give the panel guidance on where to go in this case. In that particular case, there was a CR 35 motion, and it was basically objected to by the government. But the trial court fashioned a remedy whereby it ordered that the defendant be transferred from state custody to federal custody. And he also ordered that, in essence, the time served in the state court would be applied to the time to a sentence in the federal. And the Warren court basically addressed both those issues. That first issue, excuse me, which I think is before this court, deals with the priority of custody rule. The priority of custody is, in essence, it's like when we were kids on the school ground, first come, first served. That's basically the underlying principle. And so the sovereign that, in essence, arrested a defendant first has primary jurisdiction over that individual for purposes of However, that priority is discretionary, and that's important. The Warren court said that's discretionary. But that discretionary aspect of that priority rule rests with the executive branch. In the Warren case, the court itself, when it fashioned its remedy, it basically transferred the individual from the state court to the federal system without approval, without the consent of the United States or the executive branch. Because the Warren court basically enters order saying that the exercise of discretion is specifically with the executive branch. In our case, we have a plea agreement that was approved by the U.S. Attorney's Office in consult with the Bureau of Prisons. So the U.S. Attorney's Office, which is part of the executive branch, in essence, waived the discretion of the priority rule by entering into this plea agreement. That was part of the plea bargaining process. But we need to back up a little. I mean, I'm hopeful you all will resolve this. But if you don't, then let's get to the underlying issue here. And in essence, you proceeded with a plea agreement that you knew could ultimately not be guaranteed. The written plea agreement, which is what's before us, and for me the whole issue is the statement of the prosecutor at the time of the hearing and whether somehow that affected what was in the written plea agreement. The written plea agreement said the prosecutor would recommend that the defendant serve his time in the manner that you all had agreed, that it would be the failure to surrender would be concurrent with the state, and that would be first, and then his underlying crime would then go second. I'm not quite sure how that all, what research you all did to think that that would happen, because I think the court made it really clear that he couldn't guarantee it. I know that there were representations from the prosecutor that perhaps that would be happening because that he had talked to someone from BOP and they said that they could make it happen. But when you look at the written plea agreement, all you had was a recommendation. So what's your best argument here and what authority? Well, I think that Warren case itself is the authority for this case in that the exercise of The Warren court specifically said a district court may not order a sovereign here, you know, the Attorney General, to relinquish custody. How does that help you? That helps us because, number one, that statement deals with the court on its own discretion ordering it, which is different. They did that in that Warren case under CR 35 motion. Here we have an agreement by the executive branch through the U.S. Attorney's Office, which is a specific waiver. And the Warren court specifically said that the priority rule is discretionary. Well, you know, it's a stretch to call it a waiver because the plea agreement only says that it will make a recommendation. That's true. But when you couple that with the fact that we filed our motion to basically compel the specific performance of this contract, which is the plea agreement, there was no objection by the United States. No, no, no. But the contract doesn't say, and, you know, everybody agrees you will serve your sentence here. It doesn't say that. All it says is we will make a recommendation to the court. Isn't that right? And the recommendation was made. Yeah, that was made. And I think that would be a waiver basically saying we're not going to object, Judge, if you do this. That's in essence a waiver. So the court entered, you know, its criminal judgment in conformity with what the plea agreement was and what the parties had agreed to. And here you have a combination. You have only a recommendation in the actual written plea agreement, and then you have the judge saying, you know what, you all know I can't guarantee this to happen. The law is pretty clear that BOP has complete control over where they serve their time. But if you all want to enter into this, let's go ahead. That's basically what happened. So I don't understand with that combination how you're arguing that somehow there was a waiver. Well, Judge, I think you may be mischaracterizing it somewhat. The court does not have jurisdiction to order that on their own. However, under the priority custody rule, that's discretionary. And that discretionary component rests with the executive branch, which is basically the U.S. Attorney's Office. So when the U.S. Attorney's Office exercises that discretion and says, we're going to put together this plea agreement that basically says we're going to recommend that the court take this action of transferring you from the federal custody to the state custody, I think that constitutes a waiver. It was just a recommendation, though. But that was, in essence, they're going to write it. Well, the court didn't have to do that. And it wasn't a C1C plea. It was a standard plea agreement. The court could have not done it or they could have done it. However, the government was, in essence, exercising its waiver in order to complete this plea agreement with the defendant. I think we understand. You want to reserve your one minute and 40 seconds. Okay. Thank you, Judge. I'll respond. Oh, I'm sorry. You are over time. Sorry. Go ahead. Good morning. My name is Matt Duggan. I represent the United States in this matter. Your Honor, the two key points that I want to make in addition to the written brief, does Your Honor have a question? Yeah. I just want you to confirm here on the record today your understanding that you agree with what's been discussed as what will be happening in the state court. Are you in agreement with that? Certainly, Your Honor. I am in agreement. And we have been in discussions on that very topic. We had hoped that it would be completed before today's argument, but we were not able to do that. And I agree that it can be accomplished within two weeks of today's date. And if it is accomplished, then you're moving to dismiss the appeal? I understand the defense would be moving to dismiss the appeal, and I have signed off on an order dismissing the appeal once this takes place. Yes, Your Honor. Okay. Thanks. Proceed. Once the state court confirms its agreement to the overall plea agreement, right? Once the state court agrees to grant credit for time served that satisfies Mr. McReynolds in this case, that's it. In effect, the sentences will be concurrent? Yes, Your Honor. All right. Once the state court agrees to that, then that's the only condition of your agreement to, what, dismiss this appeal? Correct, Your Honor. And I will not be objecting to a dismissal of this appeal so long as Mr. McReynolds and his attorney are satisfied with what relief they get in state court. So regardless of whether they get that relief or not, I will not be objecting. I got you. Your Honor, the main points that I wanted to make in addition to my brief was that the defense claims in this case that this order of the sentencing in this case was so crucial to this plea agreement that he did not make a knowing and intelligent plea. But I would argue that it's not because the United States made a recommendation, followed through with its recommendation, and if this issue were so important to the defendant, he would have demanded an 11C1C plea or he would have conditioned the appeal in this case such that if this didn't occur, he would be able to appeal. Well, that's two things. One, I would like for you to respond to this Warren argument and to the counsel's view on his position on Warren in this case. And then second, why then did the – were you the prosecutor? I was, Judge. You stood up during the plea and said to an open court, it's on the record, even though you only made a recommendation, you stood up and you said, I've talked to BOP, Judge, and they can make this happen. That's completely inconsistent with the recommendation. Well, the recommendation – So why doesn't that just – isn't that manifest injustice with respect to this plea? Your Honor, I believe that that coincides with the recommendation. The recommendation was that the sentences be served in a particular order, and I had contacted BOP and was given their assurance that that could happen if the plea agreement was entered the way that it was entered. And it was entered that way, wasn't it? It was ordered that way. It didn't happen. It didn't happen. The court followed the recommendation of the parties. So you don't think the defendant was misled by your standing up in court and saying that you had assurances from the BOP to the degree that this plea agreement should be voided? I don't, Your Honor. And this is something that comes in to play with the Zweber case that the court asked us to take a look at. In that case, the defense and the prosecutor asked that the defendants be given a lower offense level based on a minor participant role. Both parties agreed to that. The court did not find that they met the threshold for a minor participant and ended up finding them with a higher guideline sentence range and ultimately gave them a much higher sentence than what was agreed upon. Well, it's not exactly the same because in Weber, was the prosecutor sending mixed messages? No, Your Honor. Do you don't think he was sending a mixed message here when you said just we're recommending, but then you stood up and said we've got assurances, the judge of the BOP told us they can make this happen? I don't, Your Honor. And the other point that I'd like to make in conjunction with that is that if this plea agreement were never entered into, if this charge were never brought or if it were dismissed, the defendant would still be in the same position that he's in today. Well, that's an interesting point. Why don't we talk about that? Okay. Wasn't the surrender count, the failure to surrender, that occurred because he didn't turn himself in for the sentence that he had previously for the underlying count? I don't remember right now what the underlying count is. That's correct, Your Honor. That was a drug charge and Mr. McReynolds failed to report. All right. And so would that have to automatically come consecutive to the drug charge? That sentence was consecutive to the drug charge. So how is he going to serve the 14 months before serving the 95 months? Your Honor, one way he could have done that is because his report date on the Stevens County state court sentence was set about a week prior to his federal report date sentence. So had Mr. McReynolds shown up for his state court sentence, he would have been in state court custody and they would have had priority of jurisdiction and he would have served that sentence prior to going to federal court. But how could the 14 months have gone before the 94 months? That was after the 94 months. How is that going to ever be served before the 94 months? Well, Your Honor, when you look at the end result of the sentence, will it make any difference whether or not the 14 months is served before the 93 months? It's not a matter of making a difference, but I think from BOP's perspective it's consecutive to the 94 months. So I'm sure they were perplexed when they got this and they get to do what they want once they have him in their custody. So I don't know if anybody thought that through, but they're seeing a 94-month sentence that he was, the underlying sentence in the fail to appear, and the fail to appear was going to be consecutive to the 94 months. I don't think that he can serve it before the 94 months, but you all had crafted it, and I appreciate the reasons for your crafting and attempting to address the concerns that were expressed down below and why you wanted him to serve a state sentence first, but I just don't know if you all could really make it happen. Well, we thought we could, Your Honor, and apparently we could not, but the court is correct. We were trying to accommodate the defendant's medical needs while in custody and crafted this plea agreement to try and accommodate him. Unfortunately, that's come back and caused this appeal, and I often ask myself whether the appropriate relief is to penalize the government for attempting to assist the defendant with his sentencing needs. Well, I think it's just a matter of, you know, one, not only ensuring that the government lives up to its promise, but, you know, how the representation the government makes should be construed and how is it, you know, defendant entitled to rely on it. The way I understand Mr. Lockwood's argument, and I think this distinguishes this case from Weber's, one, in Weber what happened really wasn't under the control of the Attorney General, but here it is, and it's almost, you know, it's a matter of bureaucratic rigmarole almost, or you could call it hocus-pocus, but you work for the Attorney General, and this prisoner is in the custody of the Attorney General, right? I mean, the BOP is just another bureau of the DOJ. And so, you know, you're saying, well, I can only recommend to myself what I'm going to do. And so I talked to myself, and I was told that, yes, you know, you could serve it concurrent, and I believed what I told myself, and so I made a good faith representation. It's all right, it's all internal in the DOJ, so I think that's his argument, although I know the cases support your position that the discretion is in the BOP and not in the U.S. Attorney. But still, isn't there some equity to his being able to rely on your representation in court? Yes, I talked to BOP, and they assured me that this could be done, and I'm not in any way questioning your good faith, but it just didn't work out that way. So when that happens, what should be done? That's the question, isn't it? Yes, and I understand your point, Your Honor. I would equate that to a situation where the parties recommend a particular guideline range to a sentencing judge, and then it turns out that that guideline range is incorrect or the judge doesn't follow that guideline range. No, but the difference there, as I said, and that's Weber, the determination of the guideline range is, you know, up to an independent party, that is, a district judge. But here, the determination of the order serving the sentence is up to the Attorney General. That's you. You're here representing the Attorney General. That's correct, Your Honor, and I can tell you that while we are all part of the Attorney General's office, when I ask BOP to do something, they take a different view. Well, I guess we all have to accept that. I mean, that's what the law is, isn't it? I mean, they have the discretion. I'm not clear, counsel, as to what happened in the state court. I take it there was either a plea or a conviction in the state court. That's correct, Your Honor. Did he ever appear for sentencing, and was a judgment entered based on that sentence in the state court previously? Yes, Your Honor. The guilty plea and judgment was entered on November 11, 2010. The defendant was then given a report date for his state court sentence. That report date was in December. He also had a report date for his federal case that was in January. The defendant missed both of those dates and was arrested. And that judgment was that he served 14 months in the state prison system? Correct. Yes, Your Honor. Okay. Thank you. Are there any other questions? Thank you very much. I'll just give you one minute. Thank you, Judge. I can't emphasize enough that plea agreements are just an integral, vital part of the criminal justice system. If we can't rely on the plea agreements that our clients enter into, then that's just going to basically throw the whole criminal justice system out of habit. Well, your plea agreement was satisfied. That's not the issue. The issue is was there something created and just trying to figure out what to do in light of it. But if your argument is that, you know, your plea agreement needs to be upheld, he upheld the plea agreement. He made a recommendation. That's all that was in the written plea agreement. And we didn't, on our motion, wasn't to, you know, at that time, wasn't to vacate the plea agreement. It was basically to enforce the plea agreement and to enforce the criminal judgment that was entered by the court. And as I indicated, since the U.S. Attorney's Office and BOP are basically falling under the umbrella of the executive branch, when that occurs, then they make that recommendation. You know, I think in a civil court, that would be considered a waiver, particularly if you couple it with the fact that when we filed our motion, the BOP nor the United States Attorney General's Office objected to our motion to enforce that plea agreement and that federal judgment. So I think the fact that, you know, the court, I believe, can look at this and apply the rule and say, yes, we think that there was a waiver by the executive branch, and if that's the case, then, you know. I think we understand your argument. Thank you very much. Thank you both. But just in any event, if the state court signs off on your deal within the next two weeks, you're going to file, like, a motion to dismiss with prejudice, something like that, right? In other words, you'll let us know what the state court did. We sure will, because, you know, at that point, it would make our decisions here moot. And in addition, I guess, in two weeks, if the state court has not acted, would you please give us an update? We will, Judge. Thank you. Okay, thank you. Thank you very much for your arguments. The United States v. McReynolds is submitted.
judges: ALARCON, TASHIMA, MURGUIA